**John LUTHER, Plaintiff,**

v.

**Shirley CHATER, Commissioner of Social Security, Defendant.**

**Civil No. 3–95–CV–10142.**

United States District Court,
S.D. Iowa,
Davenport Division.

July 24, 1996.

John A. Bowman, Davenport, IA, for Plaintiff.

Christopher D. Hagen, Assistant U.S. Attorney, Des Moines, IA, for Defendant.

## ORDER

LONGSTAFF, District Judge.

Plaintiff seeks review of the Commissioner of Social Security's decision denying him Social Security benefits. Claimant asserts he is entitled to benefits under both Title II of the Social Security Act (Disability Insurance Benefits) and Title XVI of the Social Security Act (Supplemental Security Income). Pursuant to 42 U.S.C. § 405(g) and 42 U.S.C. § 1383(c)(3), this Court may review the final decision of the Commissioner.

## I. PROCEDURAL HISTORY

John M. Luther, currently age 53, filed his application for disability insurance benefits on February 22, 1993 and his application for SSI benefits on February 17, 1993. In his applications, Luther alleges being disabled since November 15, 1982. These applications were initially denied on July 15, 1993. On reconsideration, Bendt was again denied benefits on September 13, 1993.

Pursuant to a timely request, a hearing was held on August 17, 1994, before an Administrative Law Judge (ALJ). (Tr. 12). The ALJ found that Bendt was not under a disability as defined by the Act. (Tr. 13). On September 1, 1995, the Appeals Council denied a request for review. (Tr. 4–5). This action for review of the Commissioner's decision was commenced October 10, 1995.

## II. FINDINGS OF THE COMMISSIONER

The ALJ made the following findings. (Tr. 27–28). Luther met the special earnings requirements of the Act on October 15, 1982, the date he alleges that he became unable to work, and continued to meet them through March 31, 1987. The ALJ determined that Luther has not engaged in substantial gainful activity since November 15, 1982.

The ALJ also concluded that the medical evidence established that Luther had severe one vessel coronary artery disease, status post cardiac catherization, diabetes mellitus type II, a history of gout, a history of possible alcoholic hepatitis, a history of polysubstance abuse, a small umbilical hernia, a history of hemorrhoids, and possible emboli to the sole of the right foot, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1 Subpart P, Regulations No. 4. Luther's allegations regarding func-

tional restrictions were essentially credible, but his contention that these restrictions preclude all work activity could not be considered credible.

The ALJ determined that Luther had the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting and carrying more than 20 pounds occasionally and 10 pounds frequently and any reaching overhead with his left arm or repetitive pushing or pulling. Luther can merely perform simple, routine, repetitive work.

The ALJ also concluded that Luther is unable to perform his past relevant work. Luther was 52 years old at the time of the hearing, which is defined as closely approaching advanced age. He has a high school education. The work skills which the claimant acquired and demonstrated in past work are welding skills. Considering his residual functional capacity, Luther can transfer these skills to other types of skilled or semi-skilled work. When considering his age, education, previous work experience, and residual functional capacity, jobs still exist in significant numbers in the national economy that Luther can perform. Examples of such jobs are: production solderer, production assembler, and hand packager. Finally, the ALJ concluded that Luther was not under a "disability" as defined in the Social Security Act, at any time through the date of the ALJ's decision.

## III. DISCUSSION OF APPLICABLE LAW

 A court must affirm the decision of the Commissioner if substantial evidence on the record as a whole supports the decision. 42 U.S.C. § 405(g). "Substantial evidence is that which a reasonable mind might accept as adequate to support the Secretary's conclusion." *Whitehouse v. Sullivan,* 949 F.2d 1005, 1007 (8th Cir.1991). A court may not reverse merely because substantial evidence would have supported an opposite decision. *Locher v. Sullivan,* 968 F.2d 725, 727 (8th Cir.1992).

Luther argues that the ALJ erred in three ways. First, Luther argues that the ALJ improperly discredited his testimony and other evidence. Second, Luther asserts that the ALJ failed to properly develop the record by failing to order additional medical evaluations for him. Third, Luther asserts that the ALJ failed to demonstrate that there are a significant number of jobs that he could perform.

### A. Duty to Develop the Record

The ALJ determined that Luther had the residual functional capacity to perform the physical exertional and nonexertional requirements of work except for lifting and carrying more than 20 pounds occasionally and 10 pounds frequently and any reaching overhead with his left arm or repetitive pushing and pulling.

Dr. Jay Ginther, a treating physician, examined Luther on several occasions between 1983 and 1986. On May 5, 1986, Dr. Ginther stated that he did "not think [Luther could] go back to his old occupation at all, but ... that there may very well be some alternate occupation for which he can be trained in which he does not need to use the shoulder heavily...." (Tr. 174). Dr. Ginther also stated that Luther told him that he was considering going into the restaurant business. (Tr. 175). Dr. Ginther stated that it sounds "like the physical activity [that Luther] could maintain." (Tr. 175). Dr. Ginther also noted that Luther had a 62% impairment of the upper extremity and a 37% impairment of the whole person. (Tr. 175).

Dr. Boynton Woodburn, a consulting physician, conducted the physical functional capacity assessment of Luther. He stated that Luther "would have problems with heavier lifting and certainly with elevation of [his] shoulder above chest height." (Tr. 246). Dr. Woodburn also indicated that Luther would have a limited ability to reach in all directions with his left hand. (Tr. 249). He also indicated that Luther could occasionally lift 20 pounds and frequently lift 10 pounds. (Tr. 244). However, Dr. Woodburn stated that a treating physician's source statement regarding Luther's physical capacities was not in the file relied upon for the residual physical functional capacity assessment. (Tr. 253). The residual physical functional capacity assessment included situations in which there was no statement from the treating

physician or when there was, it did not provide a statement regarding the claimant's physical capacities. (Tr. 253).

■ The ALJ has the duty to fully and fairly develop the record. *Battles v. Shalala,* 36 F.3d 43, 45 (8th Cir.1994). Moreover, in the present case the burden of proof shifted to the Commissioner to prove that jobs existed in the national economy which Luther could perform because the ALJ concluded that he could not return to his past relevant work. *Evans v. Shalala,* 21 F.3d 832, 835 (8th Cir.1994).

■ Dr. Ginther, while opining that Luther could return to another occupation and indicating an impairment percentage for Luther, failed to indicate the extent to which Luther could lift and carry items. Ginther only indicated that Luther should pursue an occupation in which he does not need to use his shoulder heavily. Dr. Woodburn specified lifting limitations and reaching limitations but did not personally examine Luther or rely on the statement of an examining physician in conducting his assessment. (Tr. 253). As a result, Dr. Woodburn's opinion is not entitled to significant weight. *See Anderson v. Heckler,* 738 F.2d 959 (8th Cir. 1984) (report of a consulting physician should be given only limited weight in evaluating the claimant's disability, especially where examination was very brief). *See also Piepgras v. Chater,* 76 F.3d 233 (8th Cir.1996) ("A treating physician's opinion deserves no greater respect than any other physician's opinion when the treating physician's opinion consists of nothing more than vague, conclusory statements."); *Davis v. Shalala,* 31 F.3d 753, 756 (8th Cir.1994) ("A treating physician's opinion is generally entitled to substantial weight; however, such an opinion is not con-

clusive in determining disability status, and the opinion must be supported by medically acceptable clinical or diagnostic data.") (citing *Matthews v. Bowen,* 879 F.2d 422, 424 (8th Cir.1989)); *Fleshman v. Sullivan,* 933 F.2d 674, 676 (8th Cir.1991) (treating physician's opinion may receive little weight if opinion is unsupported by medically acceptable data).

■ To provide support for the residual functional capacity assessment, on remand the ALJ should clarify Dr. Ginther's conclusions regarding Luther's restrictions on lifting and reaching. *See Coppejans v. Sullivan,* 811 F.Supp. 427, 432 (S.D.Iowa 1992) (remanding a case so that the ALJ can clarify the conclusions of the treating physician through the use of written interrogatories or other available forms of record development). On remand, the ALJ should also determine whether it is necessary to order a medical examination or obtain additional information concerning the extent of Luther's other impairments.[1] *See Barrett v. Shalala,* 38 F.3d 1019 (8th Cir.1994) ("The ALJ is required to order medical examinations and tests only if the medical records presented to him do not give sufficient medical evidence to determine whether the claimant is disabled."); *Dozier v. Heckler,* 754 F.2d 274, 276 (8th Cir.1985) (per curiam) (finding that the ALJ should have ordered a psychiatric or psychological examination to evaluate a claimant's anxiety).

## IV. REMAND

The ALJ needs to fully and fairly develop the record by obtaining medical evidence to support Luther's limitations in his residual functional capacity.

---

1. The ALJ found that the medical evidence established that Luther had severe one vessel coronary artery disease, status post cardiac catherization, diabetes mellitus type II, a history of gout, a history of possible alcoholic hepatitis, a history of polysubstance abuse, a small umbilical hernia, a history of hemorrhoids, and possible emboli to the sole of the right foot.

In determining whether an impairment restricts the residual functional capacity of Luther, the ALJ should consider recent amendments to the Social Security Act. Under the Contract with America Advancement Act of 1996, "[a]n individual shall not be considered to be disabled for purposes of this title if alcoholism or drug addiction would (but for this subparagraph) be a contributing factor material to the Commissioner's determination that the individual is disabled." Contract with America Advancement Act of 1996, Pub.L. No. 104–121 § 105(a)(1); P.L. No. 104–121 § 105(b)(1). Drug addiction or alcoholism is "material" if the individual would not be found disabled if alcohol or drug use were to cease. 20 C.F.R. §§ 404.1535, 416.935 (1995).

**542**

IT IS ORDERED that the decision of the Commissioner is reversed and the case is remanded for further proceedings consistent with this order. The Clerk of Court shall immediately enter judgment for plaintiff which triggers the running of the time in which to file an application for attorney's fees under 28 U.S.C. § 2412(d)(1)(B) (Equal Access to Justice Act). *See Shalala v. Schaefer,* 509 U.S. 292, 113 S.Ct. 2625, 125 L.Ed.2d 239 (1993).